If you intend to keep any time for rebuttal, you have to budget it yourself. We won't remind you about it. Thank you, Your Honor. Paul Tyrell for the appellants, and with me is my colleague, Kendra Hall. Because we're here on two appeals, I'll be arguing the appeal of the judgment. Ms. Hall will be arguing the appeal of the award of attorney's fees, and we'll maintain that time allocation as between us. Keep your voice up, please. Certainly, I'll reserve some time for Ms. Hall to present the attorney's fees issue. May it please the Court. We're here following summary judgment in an indemnity action. The plaintiff, ILC, was awarded more than $10 million in damages, plus attorney's fees. We've raised several jurisdictional issues, and we also believe that the district court erred in its interpretation of the indemnity agreement by reading it to allow an uninjured plaintiff to sue for damages suffered by another entity. I'll start with the jurisdictional issues and then get to the contract issues. First, on the standing issue, there are some important facts that I would just like to briefly recite and then move into the argument. The damages in this case are expressly limited to attorney's fees and royalties that were paid in connection with separate underlying patent lawsuits. There are no other damages sought in this action. There are no consequential damages that were requested, and none were available under the indemnity agreement. Counsel, this is a lawsuit under an indemnification agreement, isn't that correct? That's correct. All right. And you're talking about what the allegations are in the complaint and damages. Don't you start with the notion as to whether they come within the indemnification clause and therefore they are asserting a kind of claim that is called for under the indemnification clause? Well, if you read... So what they're seeking, if it's not covered by the indemnification clause, then you would have a defense on them, correct? That's correct. They are seeking what is contemplated by the indemnification clause, are they not? We don't believe that the indemnification clause entitles this plaintiff to recover the damages that were sought and awarded in the district court. What are the damages? Well, you don't think there's... There are damages in the sense the indemnification clause specifies what kinds of matters are covered by indemnification. Okay? And it could be liabilities, claims. Damages are one of the things. But there are exclusions from damages. They can get attorney fees that are cost, isn't that correct, under the indemnification? If those were costs that they incurred. That's right. One of the buying parties recovered. I don't know if you contest all that, but I'm trying to tie together the standing issues because you seem to be arguing Inova is the only one who paid these claims, and yet they're a buying party. So I'm having a little trouble integrating or dealing with your standing arguments and fitting them into how they fit within the indemnification clause. So would you just keep that in mind as you cover your standing arguments? Certainly. Thank you. And the heart of the standing issue is, as you've noted, that the damages, all of the damages sought and all of the damages that could have been sought in this action were incurred by a party that's not in front of the court, Inova. Well, why weren't they incurred by ILC? Isn't Inova one of the buying parties, right? Inova is specifically, you're correct, within the definition of buyer-indemnified parties. And so is ILC. And Inova is 100% owned subsidiary of ILC. So it's at least an affiliate if it's not something else. That's correct, as are about 50 different entities within the Worfen Group and each of their officers and directors. It's a vast net by that term. That's why the contract was drafted broadly. They wanted protection against misrepresentations of the very sort that are at issue in this case, as I read what's going on here. And I'm just wondering why it is that someone who comes within this indemnification clause, nominally at least, doesn't have standing to enforce it. Initially, Article III requires injury in fact. Yes. So that's the first threshold that's not met because this party, ILC, has no injury in fact. Why not? Didn't it invest in this venture that paid your client millions and millions of dollars? And then they found that if we accept the allegations of withholding critical information about a pending or threatened claim that then wound up costing them substantial millions of dollars directly or indirectly, and that's what the language is of the indemnification, directly or indirectly, it seems to me that that's what your client signed on to. My client agreed to indemnify, and I will speak to that meaning of the word indemnify,  As to your question about the theoretical consequential damages, the lost value of stock and whatnot, even if there were such losses, and we contend there are not, they were never sought in this action. But they're seeking what they think the contract calls for. So say this contract had a liquidated damages clause. Say it said that if there is any misrepresentation, then any buyer party can get a million dollars of liquidated damages. Would you be here saying they don't have standing because they weren't injured, even though there's a liquidated damages clause? That seems like what you're saying. You're saying there's some other requirement other than the fact that they're claiming a right under this contract that they're coming here to enforce. Now, we can talk about whether they succeed on the merits about what indemnification means and whether they really have this right, but standing seems like the wrong path to be challenging this on. And I can move on from standing, but to address the issue, we only look at the damages that were claimed in the case. And the only damages claimed in this case were indemnification for those attorney's fees and those settlement royalties that were paid in those patent lawsuits. There is no claim here about those other types of damages. But why does there need to be? So what's the difference between if there were a liquidated damages clause that said if there was any misrepresentation, there's a liquidated damages clause for a million dollars, would you be saying they don't have standing to enforce the liquidated damages clause? Well, I guess it would depend on how that clause was drafted and which parties were entitled to recover. Well, what if it said the exact same thing, any buyer indemnified party? Well, I think that's what makes this case different is that we have a phrase in this case that says, sellers shall indemnify. And that makes it different from if we were in a liquidated damages case where the facts might be different. But that goes to the merits, not the standing, right? And I'm here to speak to both standing and merits. If the liquidated damages clause said any indemnified party will be paid, that would be different. That would be different. Right. So moving beyond Article III standing, we also have the shareholder standing rule that we've raised. And that provides that a shareholder may not sue for the damages suffered by the company in which it holds shares. And here the damages were suffered by the subsidiary, Inova. One hundred percent of the damages were suffered by Inova. And you have the shareholder, ILC, the parent suing for those damages. That's right within the shareholder standing rule. And therefore, ILC lacks standing. Now, they've argued that they... But ILC is a buyer indemnified party under the definition of the contract, right? Yes, Your Honor. So I think it comes back to the same thing. If the contract gives them the right to enforce the contract, we have to decide on the merits whether they win their contract claim. But you're back to standing again, and I'm still not sure why. Well, only because I want to mention the shareholder standing rule, which provides that you have to make sure you have the right party suing. And here what we clearly have is a parent suing for the injury of its shareholder. They are a party. To the contract. They are a party. They're a defined buyer indemnified party. But there is no... Indemnification is a contract concept. You're investing... Maybe you should get to your argument on indemnification, because this is a standard indemnification concept. You have a multi-corporate entity which has structured this transaction. They're acquiring your client's company for millions and millions of dollars. They want indemnification if there has been some nondisclosure about some claim that's going to devalue the asset for which they have paid your client millions of dollars. If they've withheld information that affected the valuation of the transaction, they're invoking the indemnification because some third party surprises them by jumping out of the woodwork, even though your client allegedly knew about it. And so they're coming to the indemnification clause and saying, we're entitled to recover under the indemnification clause, whether it's damages or it's costs or it's attorney fees. That's the economic value we're putting on what we need to be recouped, whether it was incurred by our subsidiary or us directly is not the point, as long as it's part of the transaction and what fits within buyer indemnified party. Now, that's fine. I'd like to hear your arguments in that regard. Certainly, and let me then address your issue by moving to the indemnification issue. Section 6.1 of the Stock Purchase Agreement provides each seller agrees to indemnify. And indemnify has meaning. It means to reimburse, to make another hole for its loss. Judge Sobran says it all. He says at tab 2 ER 10, thus defendant's indemnification obligation can be, as here, triggered in favor of one party, even if another party pays or incurs the damages. Your position is he's flat wrong. Yes, Your Honor. Right. Why is he wrong? The word indemnity has meaning. It's to be given its common and ordinary sense meaning. And in this case, it was read out of the contract. The word indemnity is not given any meaning the way that the district court has read it. My clients agreed to indemnify a party that was injured. They agreed to indemnify any of that vast number of entities or individuals should they be injured. That's why they agreed to indemnify. And if you give meaning to the word indemnify, it does not allow an uninjured party to sue for damages of another party. Plus, you have to read Article 6 as a whole. And as we've pointed out, there are several provisions in Article 6 that speaks to indemnity that make no sense if the buyer indemnified party seeking indemnity hasn't been injured. Those other provisions don't make any sense. But if you read them, giving indemnity its meaning, and if you read them with the assumption that the party seeking indemnification has been injured, all of those provisions make sense. Going to this indemnification clause, it says that any of the buyer indemnified parties can collect under this clause. And it defines them either individually or collectively. And then it goes on to say that what they can get is the losses from any buyer indemnified party. If your interpretation is right, why does it say collectively the buyer indemnified party is rather than just a buyer indemnified party? Because you seem to be saying that it can only be a buyer indemnified party getting its own damages instead of collectively any of them getting the damages of any of them, which is part of what the clause seems to say. Well, the intent was to give flexibility. My clients agreed to indemnify any of those parties for any of their losses. But what you have here is an uninjured party seeking indemnification. But why did you need to, why does the contract need to say collectively the buyer indemnified parties instead of just saying individually any, it could just say individually any buyer indemnified party and then move on. It contemplates that there's some collective thing going on here rather than just an individual suing for its own. And I suppose there could be facts where that could be implicated, but that's not what we have here. The final point that I want to mention is, before I turn it over to Ms. Hall to speak to the attorney's fees motion, is that one of the problems here is you have to read a contract to avoid absurdities. And also we have 28 U.S.C. Section 1359 that prohibits collusive joint or parties. Inova, the injured party, was a party to the stock purchase agreement. Under Section 6.1, it could have brought this claim. The buyer indemnified parties, ILC and Inova, decided among themselves that they were going to pick ILC to be the plaintiff, to create diversity jurisdiction. Had Inova sued, we'd be litigating in San Diego Superior Court because there'd be no diversity. Has the statute run? I believe so. So if we dismiss now, you're going to say they can't sue anymore? Inova can't bring a lawsuit anymore? Well, I believe that the statute of limitations might be an obstacle, but that's only due to the choices that were made by the plaintiffs in trying to create the appearance of diversity where none really existed. There might be some tolling provision under California law because of this action. I haven't researched that yet, Your Honor. So I'd like to reserve some time but also give Ms. Hall the opportunity to speak to the award of attorney's fees. Thank you. Good morning. I'm Kendra Hall on behalf of appellants. As Mr. Terrell indicated, I'm addressing the attorney fees issue and specifically the prevailing community market rate that was applied by the district court in this case. And it's governed by California law. The general rule in California is that it is the community market rate of the court and not counsel that applies. And if you're going to apply the rate of counsel and out-of-town counsel, it is their burden of proof to establish an exception. And the rule is that you must establish either that an attempt, a good faith attempt was made to contact, retain local counsel or that it would have been futile. And there is zero evidence of that precedent in this case. Nonetheless, Judge Sabra found that the exception for a higher out-of-town rate did apply and awarded the higher Los Angeles rates based on a finding that the London-based transactional lawyer who had switched firms from Food Frank to Milbank could hire the Los Angeles Milbank lawyers. And those lawyers had no prior familiarity with the facts with the client. And so it was on that basis that Judge Sabra found an exception had been met. We can affirm on any ground, right? Yes. So why couldn't we consider Southern California in general to be the relevant locality? I think that's a factual question. And Judge Sabra specifically addressed it when he found that San Diego was the community of the court for this case. I would also indicate that San Diego and Los Angeles are obviously different judicial districts. And in those cases where- Not at this point, though. Now we're all here, right? So, I mean, why can't we just say-we could affirm on any ground. Why can't we just look at this and say they're not that far apart, it's not unreasonable to view Southern California all as one and say that this was appropriate? I think it would be a novel legal finding for this court to make such a statement. I think it's more factually based in terms of what's happening in the various communities. But we have to look based on California law, right? Do you have any California case that says when we're talking about a federal district court, we have to only look within the jurisdiction of that federal district court? It is not so limited. But the few cases that do talk about a community expanding beyond a particular city, it's a much closer proximity. And also it indicated the rates themselves between San Diego and L.A. were $700,000 difference would indicate that the communities are quite different. It's not a similar community. Well, that depends how you define the community. If you average the whole thing, then we won't have that problem, right? But the evidence relied upon and accepted by the district court, in this case with the TIE metrics report, treated those two communities differently. And the outcome and the fees were quite different. And my final point would be that, you know, the California Supreme Court in Ketchum v. Moses has indicated what a significant issue, grounding and anchoring the rate for the Lodestar analysis into the community of the court and the district court. May I ask you a question regarding our scope of review? Judge Sobral says there's not that much difference between Los Angeles and San Diego. Is that a determination which we review for abuse of discretion or de novo? Judge Sobral actually found that San Diego and L.A. were different and said that San Diego was the community of the court. I believe it would be an abuse of discretion standard, but it is more factually based. All right. The final point on the— Is it abuse of discretion or clear error? Excuse me? Is it abuse of discretion or clear error review? A factual finding would be reviewed for clear error. Our contention here is that the court's findings were outside the appropriate standard as set by California law. The second—so that was a $700,000 issue. And let me just conclude by briefly talking about the second issue, which was whether the rate applied for the services specifically of Mr. Marks were for similar work within the community, which is the standard. And Judge Sobral accepted the TIE metrics report as the evidence. That report describes rates for litigation work as well as for corporate transactional work. And he found that for this case, Mr. Marks' services should receive a rate for corporate transactional. And that was error because the report indicated that the transaction rates did not encompass litigation matters. By contrast, the litigation rates did include corporate litigation, contract litigation, which is clearly what this case was about. And so we contend that there is a $140,000 issue there that resulted in error. Thank you. Thank you very much. All right. We'll hear from the appellees. Good morning, Your Honors. May it please the Court. My name is Jerry Marks for the Appellee ILC. I'd like to first make some overarching points, some of which were made in Your Honors' questions to opposing counsel. First, this is a simple breach of contract case. There is no dispute that the litigation is between contracting parties. There's no dispute that the sellers breached the contract. They're not contesting that on appeal. There's no dispute that that breach led directly to our client spending millions of dollars to settle a CCP3 patent dispute. And there's no dispute that those millions of dollars were paid. When you say our client, do you mean ILC or Inova? I mean ILC, Your Honor. And in what sense did they pay that? The amounts were paid by Inova because Inova was the defendant and the plaintiff in this case. Did Inova assign his claim for indemnity to ILC? No, Your Honor.  All right. Isn't that the point that's being made by the appellant? Indemnity is the reimbursement and compensation for damages paid by the indemnitee, by the indemnitor. ILC didn't pay a dime. Inova did. Inova was a California corporation. If it had sued in district court, there would have been no subject matter jurisdiction. ILC is a Delaware corporation. They had diversity. Isn't that the reason the suit was by ILC? No, Your Honor. The reason the suit was by ILC is because ILC is identified in Section 6.1 as the buyer. As an indemnified buyer. As both two things, Your Honor. They're identified as both the buyer with all the rights and obligations under the Stock Purchase Agreement and they're also, ILC is also identified as a buyer indemnified party. And it says here, as I read it, that there's an agreement to indemnify for sums or damages sustained or paid by any buyer. ILC never paid anyone. And that's why the 6.1 is structured in this manner. And it is as broad as was indicated by the panel's questions. It indemnifies the buyer, ILC, for a number of items that are collectively defined as damages. And it indemnifies the buyer for damages that are suffered, sustained, incurred, or paid by any buyer indemnified party. ANOVA is, without dispute, a buyer indemnified party. So this 6.1 was structured in the way it was so that the buyer, ILC, could recover if any buyer indemnified party, including ANOVA, suffered, sustained, incurred, or paid those damages. And the reason why it was structured that way is because this lawsuit is exactly the very lawsuit that this provision is intended to guard against. Because when ILC buys ANOVA, the most overwhelmingly most likely scenario is that there was misrepresentations about the intellectual property ANOVA has, and ANOVA subsequently faces a lawsuit. And is the problem that ANOVA couldn't easily sue on its own because it would have been accused of making some of those misrepresentations, so you really needed a different plaintiff? That is, well, that is exactly what defendants would have argued. If ANOVA, who wasn't the buyer but was the company being sold, brought the lawsuit, one of the first arguments defendants would make is ANOVA made the misrepresentations that ANOVA is now suing us for. They can't sue and recover for misrepresentations that itself made to the buyer. So it seems like you could have contemplated this. When drafting this contract, you could have imagined that this is the situation, right? ANOVA has the intellectual property. They used to be the ones making the representations. Now you've got this situation. Why didn't the contract say something clearer, like, you know, even if the buyer-indemnified party doesn't pay directly, it can still recover, or something just a little clearer than what we have here? I can't. Through the discovery, Your Honor, it was never, that issue never came up. I thought 6.1, by using any instead of that, and by defining it collectively instead of narrowly individually, was about as good an effort as drafters could do to make it clear that this very scenario is what the parties intend to capture. And as far as the lawsuit, why ILC, it's as simple as ILC is the buyer. ANOVA is not the buyer. So when you look at all of the rights and the obligations, they all flow to and from ILC. When you look at the indemnification clause where the sellers were indemnified, it says the same thing. The buyer, ILC, is indemnifying the sellers for damages suffered, sustained, incurred, or paid by any of the sellers. So it was reciprocal that way. So it didn't matter who physically cut the checks. The real issue is if you're buying a company, you shouldn't buy a lawsuit that causes millions of dollars of damages. So if we were in equipoise, if we just really look at this and we say we can't tell, there's a good argument that this covers this situation and there's a good argument that it doesn't, who wins? We still win. Why is that? Because Article III standing and prudential standing do not depend on the interpretation of the contract. Right, no, I totally agree. You've got standing. No problem. Let's move on to the merits, though. If on the merits we just cannot tell what indemnification meant in this contract, we don't know whether you're allowed to recover under this contract or not. Do we construe the contract against one or the other of you because someone drafted it? Do you have the burden so you lose? I mean, what do we do if we think this is just totally unclear? Well, as to the arguments that the appellant has made, the subject matter jurisdiction, I believe subject matter jurisdiction still is. Let's put that aside. I'm just talking about the merits. Who wins on the merits if we can't figure out what this contract meant? On whether or not we fled damages? No, no, no. Whether or not their argument seems to be you have to be ILC, as you put it, has to be the one that cut the check. They keep saying, well, you didn't spend a dollar in this. ILC didn't spend a dollar. Right. That's the question. So how do you win, prevail on that argument if there's some ambiguity in the clause? Well, I would point to a few things. Number one, it was not contested that it was ambiguous at the district court. There was no extrinsic evidence presented to the district court to determine the intention. Well, I mean, so is one option, if we think this is ambiguous, we should remand for that kind of discovery? No, because I think there was an opportunity for defendants to decide whether they believed it was ambiguous and present extrinsic evidence. Why would that be their burden, though, instead of yours? I mean, you're the plaintiff, right? Yes, and we stood on, as Judge Sobrat, the clear, unequivocal language of the agreement. If one does that under California rules of contract interpretation, 1635 civil code, as Bank of the West tells us, right, there's a progression of interpretation from plain meaning to the reasonable expectation of the promisee to contra proferentum. Are you using any of those statutory construction modules to tell us what this means? I think the reasonable interpretation of the parties, the reasonable expectation of the parties. That's what, 1654? Yes. And what is the reasonable expectation of the promisee here, that you can recover indemnity without paying for it? That you could recover indemnity if some buyer-indemnified party is forced to pay damages because of the misrepresentations of the defendant. But are you relying on their expectation or the plain language? I mean, if you start to rely on their expectation, then don't we need extrinsic evidence? No, I'm relying, first and foremost, on the plain language of Section 6.1, and specifically the broad and collective definition of buyer and buyer-indemnified parties, the broad definition of damages, and then the specific use of suffered, sustained, incurred, or paid by any buyer-indemnified parties. So, I mean, I hear you. I think you have a good argument, but I kind of think they have a good argument, too. And so if I'm really, if I just can't tell, you've got a good argument that this language expanded indemnification, and they've got a good argument that indemnification usually means it has to be that party who paid. If I'm right in the middle, can you tell me more about who wins and why? Well, because indemnification cannot, under all the case law that's been cited by the parties, cannot be looked at in a vacuum. Indemnification itself, the word, doesn't mean anything. Okay, let's assume you're 50-50 on what indemnification means. So what I want to know is, if it's right in the middle, we can't tell what indemnification means here. Let's put aside your argument about what it means. Let's say we don't know what it means. Who has the burden of proof? Who wins if we can't tell what this contract means? Maybe it's them because they drafted the contract. Maybe it's you because you drafted it. Maybe it's you that you win because they drafted the contract, or something like that. Is there any presumption or burden we can fall back on if we really can't tell what this means? I would say that the policy behind indemnification, which is to be interpreted so that a party is able to be put, recover when there is wrongdoing by misrepresentations by the other side, would tilt the balance if it really was 50-50. You said that indemnity doesn't have a statutory meaning? No, Your Honor, what I was saying is... It does because it's defined in the Civil Code of California. Yes, what I was saying is the word indemnity without knowing what the contract provides, who is indemnified, for what, and to whom. Indemnity only has meaning in a contractual term when it's linked to who is indemnified, who is indemnifying, and for what are they indemnifying. California Supreme Court has told us that indemnity is the obligation resting on one party to make good a loss or damage another party has incurred. As I read that, that means that ANOVA has a right of indemnity, but ILC has not had loss or damage, has it? Well, it's had damage in two senses. The first sense is that under 6.1, damage is described as anything paid by any buyer-indemnified party. I get it. ANOVA is a buyer-indemnified party so that when ANOVA spends that money, it is specifically any buyer-indemnified party for which ILC is the buyer. It's sort of a third-party beneficiary of a contract, ILC is. Well, ILC is actually the contracting party, so they have more rights than a third-party beneficiary. They're not a third-party beneficiary. But the way this clause is structured is, and this is not an unusual clause. I think Judge Fisher noticed that this is a pretty standard indemnification provision. The Ninth Circuit's called it very broad. The point of the clause is we've got a buyer, the buyer's buying a company, and if that company is not what was represented, then the buyer can recover any amounts paid by any buyer-indemnified party. And that's a specific term of this agreement, buyer-indemnified party, which the parties clearly defined broadly to capture anyone. I take it the answer to Judge Freeland's specific question about who drafted, this was a heavily lawyered transaction on both sides, so that there's no who prepared the contract language presumption available here? That's correct. Yeah, I just found it. So 9-11 says mutual drafting, so we can't rely on that. Yes, both sides were represented by counsel. There is a provision that says that it won't be interpreted against either party. And you said that this provision is standard. I said the concept is standard. Is this provision, these terms, been litigated anywhere in California of this one, the way it's drafted here? You said you personalized it, but say you've drafted it. You thought any made it as clear as possible rather than the choice of the word that? My reference to it, Your Honor, was that typically these indemnification provisions are, they attempt to draft them as broadly as possible so there's not something that falls through the cracks because the whole point is to make sure you're buying a company that's as represented. So in my experience with these, these are broadly encompassed, broadly drafted, and broadly interpreted so that you don't have a company being purchased that isn't as represented and not being able to recover for a lawsuit. But I don't know of a specific case that has interpreted this language any versus that. The other point I would make is that ILC, as the litigant in this case, has paid for all of the costs of the litigation as the buyer because they're the plaintiff in this lawsuit. But that's the attorney's fees issue, not the damages issue. That's the attorney's fees. We had argued at the district court and I believed we, I think we were right. Judge Subraw was the other way. But you didn't cross appeal on that. You didn't say he should have considered all this to be, I mean, I know you argued that all of the attorney's fees should be damages in the first instance, but he disagreed and you didn't cross appeal on that, right? We did not cross appeal. Judge Subraw did disagree. It is an alternative basis if the court was concerned with the language of 6.1. It's an alternative basis that I believe the court could affirm on notwithstanding a cross appeal because all it is is asking for the judgment to be upheld. It's not for a modification or alteration. And the damages, for the record, I don't think it's disputed, ILC has paid all the attorney's fees of this lawsuit. But if, we don't get there if you lose on indemnification anyway. So we have to, I mean, that would be affirming on a, we're not going to be able to affirm on that ground on the attorney's fees issue unless we agree with you that we can affirm on the first issue, right? Well, those fees still would be damages paid by, so they would be recoverable damages. Oh, I see what you're saying. You're saying you did pay, oh, I see. So you could win on the second issue without winning on the first potentially because you paid for this lawsuit. Yes. Now, I firmly believe, for all the reasons we've stated, that we have damages given the way the clause is phrased, but we could win if the court were to determine that the attorney's fees incurred by ILC in prosecuting this lawsuit and paid by ILC constitute damages under Section 6.1. So that, and it is an alternative basis for which the court could affirm. A few minutes, I don't want to cut off the discussions on the standing jurisdictional recoverable damages. But I want to address fees at some point. I'd like to ask just another question about this indemnification issue. So you are the plaintiff, and you sought declaratory relief, right? So you could have offered extrinsic evidence if you thought the plain language wasn't clear enough, right? But you chose not to? I mean, is there any reason we can hold it against them that there's no extrinsic evidence in this case? It seems like if we think we need extrinsic evidence, it's against you that it's not there. No, I don't think it's against us. It's whatever party believes this clause is ambiguous. And when it was presented to the district court, both parties said it's not ambiguous and it should be interpreted without extrinsic evidence. And so we didn't, both sides made the same decision. So what if we disagree and we think we need extrinsic evidence? Should we remand then for that proceeding and that discovery on that if it hasn't already happened and further briefing on that? If the court decides that it's ambiguous, I believe that there was a decision made by defendants that they are held to by claiming this was not an ambiguous provision and they did not offer any extrinsic evidence. But why isn't it against you? So you're the plaintiff. You have the burden of proof, I think. Why shouldn't we hold it against you that there isn't extrinsic evidence if we think it is needed to figure out what's going on here? Why should we hold it against defendants? You also made that decision. You don't normally raise, as part of your complaint, I would assume something that's not put at issue by the defendant. That's the practical answer, is that from the very beginning to the very end and through summary judgment, both sides recognized this was not ambiguous and that there was no extrinsic evidence necessary to interpret it. And so we wouldn't necessarily offer any extrinsic evidence. Defendants never claimed it was ambiguous and subject to interpretation and in need of extrinsic evidence. So we, as plaintiffs, wouldn't raise that on our own. That's really an issue for defendants. If they come in and say this is ambiguous, we want to put in extrinsic evidence. It doesn't mean what they're saying it is and we want to put in extrinsic evidence in the negotiation. That's on them. We, as plaintiffs, wouldn't inject that issue into the case. Except they were also saying it was unambiguous. They were just saying it was unambiguous in the opposite way, right? And so why don't you then say, well, okay, if that's what you're saying, then we need to show that this is what everyone meant. Well, because in our view and in Judge Shabra's view, the language was clear. There wasn't any need to offer extrinsic evidence. That's the practical answer of what happened. So if we disagree, we should send it back for more? If the court disagrees and there's no alternative basis to affirm under the damages that were without question incurred by ILC, then I would think there'd probably be no choice. I'm not sure I understand that last point. Are you saying that what is being sought in this case, only attorney's fees? No, what's being sought and was awarded in this case are the underlying CCP3 damages and attorney's fees paid to those lawyers in the litigation of that lawsuit, as well as the attorney's fees incurred and paid by ILC in this lawsuit. So what's the alternative? You're saying you would have to win under 6.1 somehow? That's correct. Before you're entitled to any attorney fees? Or you could say, I'm trying to figure out, if you're trying to salvage, if you lose on the 6.1 clear language interpretation, because you're not saying ILC paid the $9 million or whatever it was to the third party? Right. What we'd be saying is that the payment of the legal fees in this case and establishing a breach of the agreement by defendants entitled ILC as an element of damages to recover the fees spent in this case. But aren't you a volunteer to those fees? Because you didn't actually lose, you didn't actually pay the royalty payments. But the attorney's fees were incurred to establish the defendants. For somebody else. Well, they were incurred to establish the defendants' breach of the agreement by making misrepresentation. Can't the argument be made that you're a volunteer to that? It could be made. I don't think it hasn't been made. And I don't know, in establishing the breach as the buyer of the agreement, which is our right, I don't know that we would fall within the volunteer. Thank you very much. Your time is up. We'll give you a couple of minutes for rebuttal. Thank you, Your Honor. Thank you very much, Mr. Marks. Thank you, Your Honor. I want to initially correct one factual misstatement. ILC is not the buyer. ILC was not the buyer. It's not the buyer as defined in the Stock Purchase Agreement. ILC is an assignee. It received its rights after the transaction. Does it matter? Well, it does matter. Among other things, in the assignment, the buyer, the real buyer, Worfen, retained to itself all of the buyer's obligations to that deal. They didn't pass through to the assignee. So they're an assignee, just like any other buyer-indemnified party. They don't get some special standing by virtue of being a buyer if there was some. But they're in Worfen's shoes for purposes of this suit, right? So why does it matter whether they're Worfen or them since they have an assignment from Worfen? I only mention it because Mr. Marks claims some special rights or entitlement as the quote-unquote buyer. It's not the buyer. He had a fallback position that it's a buyer-indemnified party whether there's a buyer or not. And you agree with that, that ILC is a buyer-indemnified party? Yes, absolutely. But you're saying when it says each seller agrees to indemnify a buyer, they don't come within that. They're something else. They're the next clause, the affiliate clause. And you don't think the assignment from Worfen, their rights to ILC, makes them the buyer for purposes of this indemnification? No, it doesn't. It makes them an S&E. And, again, the important fact being that they suffered no damages. I want to address one of the issues that was raised, which is how do we interpret this contract. We've mentioned the need to read it in context and to read all of Article VI. I've mentioned that you need to avoid an absurdity where you have a vast network of 50 different companies, each of whom will now claim that they can sue for one another's damages without any injury of their own and be able to defeat diversity at their choosing. That becomes a policy issue. Why are you still worried about defeating diversity or having diversity? Why do you care if you're in the state court or federal court on this contract? Well, this court reached the merits and shouldn't have. Inova was the party that was damaged. Had Inova sued, we would have been litigating this in San Diego Superior Court. That's where the case would have gone. And why would that have been? I mean, is it really that you want Inova to be the plaintiff because you want to be able to make this argument that Inova made the misrepresentations, or do you really think that state court and federal court would do something different about these damages or how to interpret this contract? Well, I don't think that this issue that was mentioned about raising Inova as the wrong party to sue for fraud, this isn't a fraud case. It's a breach of contract case. So I don't know that that issue comes into play. This isn't a trap. We're not saying sue us in state court and we're going to pull a fast one. We're saying that the right party should have sued, not the wrong party. So that's my issue. The wrong party sued in the wrong court. And the decisions, the findings in this case, which we disagree with, were made by a judge that shouldn't have been deciding them in the first instance. All right. Thank you very much. Your time is up. The case of Instrumentation Lab versus Ben Binder will be submitted. Thank you very much. Thanks both parties for a very good argument.
judges: Fisher, Bea, Friedland